[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On October 11, 1995, the plaintiff, Charles Bellino, filed a two count complaint against the following defendants: Department of Correction's Maintenance Department NHCC; John Doe, Medical Administrator NHCC; and John Doe, Med NHCC. The following facts are alleged in the plaintiff's complaint.
The plaintiff, a prisoner at a State of Connecticut CT Page 5261-JJJJJJJ correctional institution, injured his shoulder at a correctional facility while playing basketball during May of 1990. According to the plaintiff, while participating in the game, he slipped in a puddle of water located on the gym floor. A correctional officer witnessed the accident and sent the plaintiff to the medical assistant at the institution. The plaintiff alleges that although he told the assistant that he was in pain, the assistant demonstrated deliberate indifference to the plaintiff's medical needs by only providing the plaintiff with Tylenol for his injury. During the following two months, the plaintiff's shoulder became dislocated eight to nine separate times. The plaintiff alleges that after these two months had passed, the institution brought him to an outside hospital where the hospital staff told the plaintiff that if he had been brought there after the accident, he would not have to undergo surgery.
The plaintiff has brought suit against the defendants under42 U.S.C. § 1983.[1] The plaintiff alleges in the first count of his complaint that the defendants violated the plaintiff's due process rights under the fourteenth amendment to the United States Constitution by failing to clean the wet gym floor. In the second count of the complaint, the plaintiff alleges that John Doe, Medical Administrator NHCC and John Doe, Med NHCC, violated state law and Department of Correction policy by demonstrating a deliberate indifference to the plaintiff's medical needs. The plaintiff is seeking compensatory and punitive damages in his action.
In both counts, the plaintiff brought suit against the defendants in their official and individual capacities. The sheriff served process on all defendants individually and officially by leaving the summons and complaint with Major James Dzurenda. (Sheriff's Return, October 10, 1995).
On October 24, 1995, the Attorney General, acting on behalf of the defendants, filed a motion to dismiss and a supporting memorandum of law. The Attorney General argues that the doctrine of sovereign immunity bars the plaintiff's causes of action against the defendants acting in their official and individual capacities. In addition, the Attorney General argues that the court lacks personal jurisdiction over the individual defendants because of insufficient process and service of process. On November 15, 1995, the plaintiff filed an objection to the defendant's motion to dismiss and a memorandum of law. CT Page 5261-KKKKKKK
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). In deciding a motion to dismiss, the trial court must consider the allegations of the complaint in their most favorable light. Savage v. Aronson, 214 Conn. 256, 264, 571 A.2d 696
(1990). However, "[a] ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action." (Citations omitted.)Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303, 306,635 A.2d 843 (1993). Rather, "[m]otions to dismiss are granted solely on jurisdictional grounds." Id., 307. "The doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." Amore v. Frankel,228 Conn. 358, 364, 636 A.2d 786 (1994).
"We have long recognized the common-law principle that the state cannot be sued without its consent. . . . we have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant". (Citations omitted.) Sentner v. Board ofTrustees, 184 Conn. 339, 342, 439 A.2d 1033 (1981). Furthermore, "[§] 1983 does not abrogate the common law doctrine of sovereign immunity." Krozser v. New Haven, 212 Conn. 415, 422,562 A.2d 1080, cert. denied, 493 U.S. 1036, 110 S.Ct. 757,107 L.Ed.2d 774 (1989).
"State officials may not be sued in their official capacities for monetary damages unless the state consents to be sued."Joyner v. Farrar, Superior Court, judicial district of New Haven, Docket No. 12196 (October 31, 1995, Fracasse, J.). "It does not necessarily follow, however, that every action in which state officials or members of state agencies are named defendants and designated by official titles should be treated as an action against the state such as to clothe the defendants with immunity from suit." (Internal quotation marks omitted.) Antinerella v.Rioux, 229 Conn. 479, 487, 642 A.2d 699 (1994).
"Sovereign immunity does not bar suits against state officials acting in excess of their statutory authority or CT Page 5261-LLLLLLL pursuant to an unconstitutional statute."[2] Id., 487-88. In this case, there is no allegation that the state officials acted in excess of their statutory authority or pursuant to an unconstitutional statute. Therefore, the doctrine of sovereign immunity is applicable.
"Before a claimant may pursue any monetary claim against the state, if the doctrine of sovereign immunity is applicable, the state must consent to be sued. . . . The claims commissioner . . . may waive that immunity pursuant to General Statutes § 4-160 (a) and consent to suit." Krozser v. NewHaven, supra, 212 Conn. 423. In this case, there is no allegation that the plaintiff received permission from the claims commissioner to sue the state. Since the state has not waived its immunity from suit for money damages, the doctrine of sovereign immunity requires dismissal of all claims against the defendants in their official capacities.
Although the doctrine of sovereign immunity bars the claims for monetary damages against the defendants in their official capacities, it does not necessarily bar the claims against them in their individual capacities.[3] General Statutes § 4-165
provides in pertinent part: "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damages or injury shall present it as a claim against the state under the provisions of this chapter." Although the statute requires a plaintiff to get permission from the claims commissioner to sue a state official or employee for negligence, no such permission is required to bring a claim for reckless, wanton or malicious conduct. In the present case, the plaintiff has alleged that the individual defendants recklessly deprived him of his civil rights by demonstrating deliberate indifference to his medical needs. See Hackett v. State, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 352161 (November 28, 1990) (If the plaintiff alleges that the state correctional employee-defendants, while acting in their individual capacities, responded with deliberate indifference to the plaintiff's medical needs, then permission to sue from the Claims Commissioner is not needed.).
The attorney general argues, however, that this suit should be dismissed against the individual defendants for lack of personal jurisdiction due to insufficient process and service of CT Page 5261-MMMMMMM process. General Statutes § 5-141d(b)[4] confers authority upon the attorney general to represent the defendant state officers and employees in their individual capacities. General Statutes § 4-141 defines "state officer or employee" in pertinent part as "every person elected or appointed to or employed in any office, position or post in the state government, whatever his title, classification or function and whether he serves with or without remuneration or compensation. . . ."
The plaintiff has alleged that the defendants violated his civil rights and that the case is a civil rights action under § 1983. (Plaintiff's Complaint, August 8, 1995, para. 1). The John Doe defendants are alleged to be employees of the State of Connecticut, Department of Correction. The plaintiff further alleges that "[a]ll Defendants have acted under color of state law during all times relevant to this complaint." (Plaintiff's Complaint, August 8, 1995, para. 6). Since the plaintiff's suit is a civil rights action, the aforementioned statutes obligate the attorney general to provide legal representation to the individual defendants. Accordingly, the attorney general may move to dismiss the action for lack of personal jurisdiction for the individual defendants.
"[N]aming John Doe defendants in a complaint and writ is improper under Connecticut Practice." Hackett v. State, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 352161 (November 28, 1990, Stengel, J.). The Connecticut Practice Book does not authorize naming John Doe defendants. Neither does Connecticut have a fictitious name statute that authorizes naming a John Doe defendant. In those jurisdictions that permit suits against a defendant whose identity or name is unknown, there are statutes authorizing the fictitious designation. 67A C.J.S. Parties 115 pp. 937-39 (1978). General Statutes § 52-45a (formerly 52-89) provides that "[c]ivil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties. . . ."
The Supreme Court of Connecticut has stated that General Statutes § 52-45a "provides, in part, that writs in civil actions shall describe the parties, presumably by their real names, so that they may be identified." Buxton v. Ullman,147 Conn. 48, 59, 156 A.2d 508 (1959), appeal dismissed, 367 U.S. 497,81 S.Ct. 1752, 6 L.Ed.2d 989, reh. denied, 368 U.S. 869,82 S.Ct. 22, 7 L.Ed.2d 69 (1961). The plaintiff's complaint CT Page 5261-NNNNNNN describes the John Doe defendants as John Doe, Medical Administrator NHCC, and John Doe, Med NHCC. Such designations are improper as the court cannot ascertain the specific persons intended to be sued. The John Doe defendants were improperly included in the writ and complaint and, therefore, service upon Major James Dzurenda was ineffective against them as individuals.[5] Accordingly, all claims against the John Doe defendants in their individual capacities are dismissed.
Howard F. Zoarski State Trial Referee