[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THIRD PARTY DEFENDANTS' MOTION TO DISMISS
Cynthia Robbins Greenidge ("Greenidge") filed an action against Volvo Car Finance, Inc. ("Volvo") and Kaseem Colebut ("Colebut") for injuries alleged to have been sustained in a motor vehicle accident which occurred on October 1, 1994 in the town of Ledyard. In the two-count complaint, Greenidge alleges she was a passenger in an automobile leased to her by Volvo and operated by Colebut when it struck a tree. She claims, inter alia, that the collision was caused by Colebut's operation of the vehicle while impaired by the consumption of alcohol.
Volvo has impleaded the Mashantucket Pequot Tribe ("Tribe"), the Mashantucket Pequot Gaming Enterprise ("Gaming Enterprise"), Robert CT Page 9846 Zitto, Permittee ("Zitto") and William Morehead, Permittee ("Morehead") as third party defendants. The third party complaint alleges that Colebut, prior to the accident, was served an excessive amount of alcoholic beverages at Foxwoods Resort and Casino and/or Foxwoods Resort Pequot Towers. Claiming that the actions of the third party defendants constitute reckless and wanton misconduct, Volvo seeks indemnification for any judgment that may be rendered against it in favor of the plaintiff.
By motion dated March 22, 2000, the third party defendants move to dismiss the third party complaint on the ground that tribal sovereign immunity from suit bars the exercise of jurisdiction over the Tribe, the Gaming Enterprise, Zitto and Morehead. In addition to the brief in support of the motion to dismiss, the third party defendants filed an affidavit concerning the creation and operations of the Gaming Enterprise. An evidentiary hearing was held on July 27, 2000, at which time the third party plaintiff challenged the assertion of the third party defendants that the Gaming Enterprise is an arm of the Tribal government.[1]
A "motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter. . . ." (Internal quotation marks omitted.)Sadloski v. Manchester, 235 Conn. 637, 645-46 n. 13, 668 A.2d 1314
(1995); Johnson v. Department of Public Health, 48 Conn. App. 102, 107
n. 6, 710 A.2d 176 (1998). "Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) Figueroa v. C S Ball Bearing, 237 Conn. 1, 4, 675 A.2d 845
(1996). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v.Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991).
"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v.Peabody, N.E., Inc., 239 Conn. 93, 99, 680 A.2d 1321 (1996). "The issue of tribal sovereign immunity is jurisdictional in nature." McClendon v.United States, 885 F.2d 627, 629 (9th Cir. 1989), citing Puyallup Tribe,Inc. v. Washington Department of Game, 433 U.S. 165, 172 (1977). "[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light." (Citation omitted; internal quotation marks omitted.) Savage v. Aronson, 214 Conn. 256, 264,571 A.2d 696 (1990). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon CT Page 9847 that basis alone. . . . Where, however . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and not conclusively presume the validity of the allegations of the complaint." (Citation omitted; internal quotation marks omitted.) Barde v. Board ofTrustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988). "A ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action. . . . [Rather,] [m]otions to dismiss are granted solely on jurisdictional grounds." (Citations omitted.) Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303,306-307, 635 A.2d 843 (1993).
CLAIMS AGAINST THE TRIBE
The Mashantucket Pequot Tribe is a federally recognized tribe by Act of Congress known as the Mashantucket Pequot Indian Claims Settlement Act passed in 1983 and codified at 25 U.S.C. § 1751 et seq. "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." KiowaTribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754
(1998); see Three Affiliated Tribes of Fort Berthold Reservation v. WoldEngineering, P.C., 476 U.S. 877, 890 (1986); United States v. UnitedStates Fidelity Guaranty Co., 309 U.S. 506, 512 (1940). A waiver of sovereign immunity cannot be implied, it must be unequivocally expressed. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978).
The third party plaintiff claims the Tribe has already consented to Connecticut's jurisdiction under the Settlement Act, citing to State v.Spears, 234 Conn. 78, 662 A.2d 80 (1995) and Charles v. Charles,243 Conn. 255, 701 A.2d 650 (1997). These cases, however, hold that tribal consent is not required to confer state jurisdiction in criminal or civil matters involving individual members of the Tribe. Neither case addresses the issue of state jurisdiction over civil causes of action against the Tribe itself, or against the agents of the Tribe acting in their representative capacity.
The third party plaintiff also claims that the doctrine of tribal immunity does not apply in cases involving the service or sale of alcoholic beverages, citing to Rice v. Rehner, 463 U.S. 713 (1983). The issue in Rice v. Rehner was whether the state of California could require a federally licensed Indian trader, who operated a general store on an Indian reservation, to obtain a state liquor license in order to sell liquor for off-premises consumption. The United States Supreme Court held as follows:
Although in Indian matters Congress usually acts "upon CT Page 9848 the assumption that the States have no power to regulate the affairs of Indians on a reservation," Williams v. Lee, 358 U.S. 217, 220 (1959), that assumption would be unwarranted in the narrow context of the regulation of liquor. In addition to the congressional divestment of tribal self-government in this area, the States have also been permitted, and even required, to impose regulations related to liquor transactions.
Id., 723. From the fact that a state may regulate the use and distribution of alcohol on a reservation, the leap to the conclusion that a tribe's immunity does not apply when a private party brings a private cause of action against a tribe in any situation involving the use or consumption of alcohol on a reservation is a leap which this court is unwilling to take, particularly in view of the recent reaffirmation of the existence (if not the logical basis) of tribal immunity from suit.Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751
(1998).[2]
In light of the fact that Congress has not authorized such a suit and the Tribe has not waived its immunity, this court is bound by the KiowaTribe decision. The United States Supreme Court in Kiowa Tribe noted that its prior decisions all sustained tribal immunity from suit without drawing a distinction based upon whether the tribal activities occurred on or off a reservation or whether such activities were governmental or commercial in nature. Id., 754-55. The Court declined to abandon or restrict its previous decisions even though it acknowledged, in dicta, that "[t]here are reasons to doubt the wisdom of perpetuating the doctrine. . . . In [an] economic context, immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tortvictims." (Emphasis added.) Id., 758. Nevertheless, in the absence of the abrogation of tribal immunity by Congress or tribal waiver, "immunity governs. . . ." Id., 760.
Accordingly, the third party plaintiff's claims against the Tribe are dismissed because the doctrine of tribal sovereign immunity deprives this court of subject matter jurisdiction over that portion of the third party complaint.
CLAIMS AGAINST THE GAMING ENTERPRISE
At the evidentiary hearing held on July 27, 2000, Attorney Jackson T. King, Jr., General Counsel for the Tribe, testified at some length as to the creation and operations of the Gaming Enterprise. The court finds, CT Page 9849 based upon the affidavit filed June 20, 2000 and Attorney King's testimony, that at all times relevant to this matter:
The Mashantucket Pequot Tribal Council ("Tribal Council") is the duly authorized governing body of the Tribe.
The Gaming Enterprise was created and established by the Tribal Council on February 25, 1991 to conduct the gaming operations of the Tribe.
The Tribe conducts its gaming operations through the Gaming Enterprise.
The day to day operations and business of the Gaming Enterprise have been directed, and are directed, by officers who report directly to the Tribal Council.
The Tribal Council maintains full oversight and control over the Gaming Enterprise.
For these reasons, the court concludes that the Gaming Enterprise is an arm of Tribal government and entitled to the same tribal immunity from suit as the Tribe. Accordingly, the third party plaintiff's claims against the Gaming Enterprise are dismissed.
CLAIMS AGAINST ZITTO AND MOREHEAD
The allegations in the third party complaint are also directed against "Robert A. Zitto, Permittee and/or William Morehead, Permittee." It is clear, and the court finds, that the claims in the third party complaint are not asserted against them in their individual capacities but rather in their official capacities as permittees of the Foxwoods Resort and Casino and Foxwoods Resort Pequot Towers.
"The doctrine of tribal immunity "extends to individual tribal officials acting in their representative capacity and within the scope of their authority.'" Romanella v. Hayward, 933 F. Sup. 163, 167 (D. Conn. 1996), aff'd, 114 F.3d 15 (2d Cir. 1997), quoting Hardin v. WhiteMountain Apache Tribe, 779 F.2d 476, 479 (9th Cir. 1985). See alsoTenneco Oil Co. v. Sac Fox Tribe of Indians, 725 F.2d 572, 574 (10th Cir. 1984).
There are no claims in the third party complaint that Zitto or Morehead were acting outside the scope of their authority as tribal officers. Under these circumstances, they are to be accorded the same tribal sovereign immunity from suit as the Tribe and Gaming Enterprise. Accordingly, the third party plaintiff's claims against Zitto and Morehead are dismissed.
CONCLUSION
CT Page 9850
The third party defendants' motion to dismiss the third party complaint is granted.
Koletsky, J.