[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS
Pursuant to Practice Book § 10-31, the defendants have moved to dismiss the plaintiff's action for lack of subject matter jurisdiction.
The plaintiff alleges in her complaint dated November 27, 2000 that on December 3, 1998, she was on the premises of the Mohegan Sun Casino when she slipped and fell. She claims that she sustained personal injuries and monetary losses and that her injuries were caused by the negligence of the defendants.
The defendants have moved to dismiss the plaintiff's claims on the grounds that they are being sued for actions undertaken in their official capacities as representatives of the Mohegan Tribal Gaming Authority, CT Page 12007 hereinafter referred to as the MTGA, and the Mohegan Tribe, respectively, both of which are sovereign entities entitled to immunity from suit. It is the defendants' claim that unless the Mohegan Tribe has expressly waived its sovereign immunity to a legal action by this plaintiff, she cannot recover against it or against its officials or employees for actions taken in their respective official capacities.
The plaintiff, in opposing the motion to dismiss, argues that the defendants are non-official tribal employees acting in a non-governmental capacity and, therefore, the defendants cannot invoke the Mohegan Tribe's immunity from suit.
At the time of the alleged incident, defendant Chapman was the Director of Facilities Operations of the Mohegan Sun Casino. The plaintiff alleges that he was negligent in failing to maintain the premises in a safe condition in that he knew or should have known of the "wet, slippery and defective condition of the floor"; that he failed to remove or clean up the "wet, slippery substance off of the floor where the plaintiff fell"; in that he failed to inspect the floor; and that he failed to warn the plaintiff of the condition.
The plaintiff alleges that the defendant Ida was responsible for her injuries in his capacity as "a building official at the Mohegan Sun Casino." The theory of liability as to defendant Ida is identical to those claims asserted against defendant Chapman as set forth herein.
Pursuant to Connecticut Practice Book § 10-31 a motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person and (3) improper venue. "A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court."Richardello v. Butka, 45 Conn. Sup. 336, (1997), Gurliacci v. Mayer,218 Conn. 531, 544 (1991). "A motion to dismiss is used to assert jurisdictional flaws that appear on the record or are alleged by the defendant in a supporting affidavit as to facts not apparent on the record." Villager Pond, Inc. v. Darien, 54 Conn. App. 178, 182 (1999), Bradley's Appeal from Probate, 19 Conn. App. 456, 461-62 (1989). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Villager Pond, Inc. v. Darien, supra at 183, Mahoney v. Lensink, 213 Conn. 548, 567 (1990).
"The doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." CT Page 12008 (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v.Peabody, N.E., Inc., 239 Conn. 93, 99, 680 A.2d 1321 (1996). "The issue of tribal sovereign immunity is jurisdictional in nature." McClendon v.United States, 885 F.2d 627, 629 (9th Cir. 1989), citing Puyallup Tribe,Inc. v. Washington Department of Game, 433 U.S. 165, 172 (1977). "A ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action . . . rather, motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted.) Discover Leasing, Inc. v. Murphy,33 Conn. App. 303, 306-307, 635 A.2d 843, 1993.
The Mohegan Tribe is a federally recognized Indian tribe whose sovereignty renders it immune from suit, absent authorization from Congress, unless the Mohegan Tribe explicitly waives its sovereign immunity. World Touch Gaming, Inc. v. Massena Management, LLC,117 F. Sup.2d 271, 275 (N.D.N.Y. 2000), citing Kiowa Tribe of Oklahomav. Manufacturing Technologies, Inc., 523 U.S. 751, 754, 118 S.Ct. 1700,140 L.Ed.2d 981 (1998). "It is well established that Indian tribes possess the common law immunity from suit traditionally enjoyed by sovereign powers." Oklahoma Tax Comm. v. Citizen Band Potowatomi IndianTribe, 498 U.S. 505, 509 (1991); United States v. United States Fidelityand Guaranty Co., 309 U.S. 506, 512 (1940); Bassett v. MashantucketPequot Tribe, 204 F.3d 343, 356 (2d. Cir. 2000). This sovereign immunity extends to tribal agencies and commercial enterprises, as well. Garciav. Akwesasne Housing Authority, 105 F. Sup.2d 12, 15 (N.D.N.Y. 2000);Ninigret Development Corp. v. Narragansett Indian Wetuomuch HousingAuthority, 207 F.3d 21, 29 (1st Cir. 2000); Kiowa Tribe of Oklahoma v.Manufacturing Technologies, Inc., supra, 757-758. A waiver of sovereign immunity cannot be implied; it must be unequivocally expressed. SantaClara Pueblo v. Martinez, 436 U.S. 49, 58 (1978)
The MTGA was created by the Mohegan Tribe to act as a governmental arm responsible for managing all aspects of the Mohegan Tribe's gaming enterprises. This was accomplished under the authority of Article XIII, Section 1 of the Constitution of the Mohegan Tribe of Indians of Connecticut, which states in pertinent part:
 "Creation of Gaming Authority. All governmental and proprietary powers of the Mohegan Tribe over the development, construction, operation, promotion, financing, regulation and licensing of gaming and an associates hotel, associated resort or associated entertainment facilities, on tribal lands [collectively "Gaming"] shall be exercised by the Tribal Gaming Authority, provided that such powers shall be within the scope of authority delegated by the Tribal Council CT Page 12009 to the Tribal Gaming Authority under the ordinance establishing the Tribal Gaming Authority."
In accordance with this provision, the Mohegan Tribe enacted an ordinance establishing the MTGA, whose purpose included the development, construction and operation of the Mohegan Tribe's gaming enterprise on behalf of the Mohegan Tribe.
The significance of tribal gaming enterprises to tribal self-determination, economic development and the provision of tribal governmental services has long been recognized. California v. CabazonBand of Mission Indians, 480 U.S. 202 (1987). Tribal entities such as the MTGA possess immunity from suit to the same extent as the tribe itself.Kiowa Tribe v. Manufacturing Technologies, Inc., 523 U.S. 751 (1998);Worral v. Mashantucket Pequot Gaming Enterprise, 131 F. Sup.2d 328
(D.Conn. 2001); Ninigret Development v. Narragansett Indian WetuomuchHousing Authority, supra; Sac Fox Nation v. Hanson, 47 F.3d 1061, 1065
(10th Cir. 1995); Altheimer Gray v. Sioux Manufacturing Corp.,983 F.2d 803, 809-10 (7th Cir.), cert. denied, 510 U.S. 1019 (1993)
The MTGA is authorized, pursuant to the Indian Gaming Regulatory Act,25 U.S.C. § 2701, et seq., to conduct Class III gaming activities on the Mohegan Reservation and thereby to raise revenues for the benefit to the Mohegan Tribe and its members. The Mohegan Tribe and the State of Connecticut have entered into a Gaming Compact, which has been incorporated by reference into federal law. 25 U.S.C.A. § 1775, Mohegan Nation (Connecticut) Land Claims Settlement Act. The Gaming Compact provides, in relevant part, as follows:
 "The Tribe shall establish, prior to the commencement of class III gaming, reasonable procedures for the disposition of tort claims arising from the alleged injuries to patrons of its gaming facilities. The Tribe shall not be deemed to have waived its sovereign immunity from suit with respect to such claims by virtue of any provision of this compact."
Gaming Compact § 3(g).
Pursuant to this provision, the Mohegan Tribe enacted the Mohegan Torts Ordinance consenting to suit for alleged tortious injuries arising on the Mohegan reservation. The Mohegan Torts Ordinance contains a limited waiver of the Tribe's sovereign immunity so that the Gaming Disputes Court may adjudicate liability for:
CT Page 12010
 "(1) Injuries proximately caused by the negligent acts or omissions of the [MTGA]; (2) injuries proximately caused by the condition of any property of the [MTGA] provided the claimant establishes that the property was in a dangerous condition; [and] (3) injuries caused by the negligent acts or omissions of tribal security officers arising out of the performance of their duties during the course and within the scope of their employment."
The Mohegan Gaming Disputes Court is the exclusive forum for the adjudication and settlement of such claims.
The plaintiff argues that her claim is not directed at the defendants Ida and Chapman as tribal officials who were acting in their capacities as representatives of the tribal government when they engaged in negligent conduct as set forth in the plaintiff's complaint.
Relying on Kizis v. Morse Diesel International, Inc.,28 Conn. L. Rptr. No. 3, 93 (November 20, 1999), the plaintiff argues that the mere employment relationship of these very same defendants, Chapman and Ida, with the Mohegan entities does not grant these defendants the right to assert the Mohegan Tribe's sovereign immunity. This court respectfully disagrees.
When tribal representatives are sued, the crucial inquiry is whether the complaint in substance is against the Tribe or tribal entity. If the conduct of the defendants, as alleged by the plaintiff, falls within the scope of their authority and their duties of employment, then the Tribe's interest is at stake, and the suit must be barred, in the absence of a waiver of the Tribe's sovereign immunity. Tenneco Oil Co. v. Sac and FoxTribe of Indians of Oklahoma, 725 F.2d 572, 576 (concurring opinion) (10th Cir. 1984); citing Larsen v. Domestic Foreign Corp., 337 U.S. 682
(1949). The argument that the mere employment relationship of the defendants with the Mohegan Tribe does not allow them the right to assert the Tribe's sovereign immunity fails to address that the defendants who are employees of the Tribe are being sued for their conduct in their official capacities as a "Director of Facilities Operations" and "a building official at the Mohegan Sun Casino." There is no basis for distinguishing between the actions of "officials" or "employees" unless the consequence of the "official's" conduct is different in legal effect from the consequences of the conduct of a "mere" employee. This action by the plaintiff is a suit against a sovereign tribal entity as the plaintiff's claims speak only of the defendants in their representative capacities as tribal employees. Where tribal representatives are sued in their representative capacities, they are cloaked with the sovereign CT Page 12011 immunity that attaches to the Tribe itself. "The doctrine of tribal immunity extends to tribal officials acting in their respective capacity and within the scope of the authority." Romanella v. Hayward,933 F. Sup. 163 (D.Conn. 1996), aff'd on other grounds, 114 F.3d 15
(2d. Cir. 1997); Garcia v. Akwesasne Housing Authority, 105 F. Sup.2d 12
(N.D.N.Y. 2000); U.S. v. Oregon, 657 F.2d 1009, 1013 n. 8 (9th Cir. 1981).
The court has also reviewed the recent decision in Greenidge v. VolvoCar Finance, 200 WL 1281541, No. X04CV960119475, Superior Court of New London at New London (Aug. 25, 2000, Koletsky, J.); 28 Conn. L. Rptr. 2,2000 Ct. Sup. 9845, and the court agrees that there are no claims in the complaint against the defendants Ida and Chapman that either or both, were acting outside the scope of their authority as tribal officers. Under these circumstances, the defendants should be accorded the same tribal sovereign immunity from suit that the Mohegan Tribe and its tribal entities, enjoy.
Construing the allegations of the complaint in the plaintiff's favor, it is evident to the court that the plaintiff seeks to recover on a premises liability theory against individual representatives/employees of the Mohegan Tribe and the Mohegan Tribe Gaming Authority. Such claims are properly presented and asserted against the MTGA, which operates the premises where the plaintiff allegedly fell and the defendants in their official capacities. Further, the proper judicial; forum is the Mohegan Gaming Disputes Court, pursuant to the limited waiver of sovereign immunity, as set forth in the Mohegan Torts Ordinance § 98-1.
Accordingly, the defendants' motion to dismiss is granted.
The Court
Arnold, J.